### JEFF McCoy v. The State.

No. 6458.  Decided January 18, 1922.

Rehearing Denied May 10, 1922.

**1.—Seduction—Newly Discovered Evidence—Practice on Appeal.**

Where appellant sought a new trial on the ground of newly discovered evidence, and it appeared from the record that ordinary diligence would have elicited all of the facts set up in the motion for new trial, the court properly overruled the motion.  Following Haley v. State, 45 Texas Crim. Rep., 102, and other cases.

**2.—Same—Charge of Court—Requested Change—Promise of Marriage.**

Where the requested charge was substantially covered in the main charge, as to the issue of promise of marriage, etc., there was no reversible error in refusing same.

**3.—Same—Corroboration—Promise of Marriage—Insufficiency of the Evidence.**

Where, upon trial of seduction, it appeared on appeal, from the record, that there was no evidence corroborating prosecutrix in regard to her claim that she yielded her person to the defendant relying upon his promise to marry her, the conviction could not be sustained.  Following Slaughter v. State, 36 Texas Crim. Rep., 527, and other cases.

Appeal from the District ourt of Hamilton.  Tried below before the Honorable J. R. McClellan.

Appeal from a conviction of seduction; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. A. Kibler,* and *Chas. L. Black,* for appellant.—On question of corroboration:-Murphy v. State, 143 S. W. Rep., 616, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hamilton County of seduction, and his punishment fixed at confinement in the penitentiary for a period of five years.

The statement of facts in this case is lengthy and the evidence salacious, and no good can come of attempting to set out the facts at length.  The young lady whose seduction was charged against appellant testified, narrating facts and circumstances relating to her intimacy with appellant and her friendly relations with others.  She was about to become a mother.  She attributed her condition to appellant.  He did not deny on the witness stand his alleged intimacy with her, but based his defense upon the fact that such intimacy was not the result of any promise on his part to marry her.

A new trial was sought by appellant upon the ground of newly discovered evidence. Hugh Parrish and Leon Barker were witnesses for appellant on the trial. It would seem that ordinary diligence would have elicited all of the fact known to them, and any evidence not purposely concealed by either of them would not be brought within the rules of newly discovered evidence. Haley v. State, 45 Texas Crim. Rep. 102; Cooper v. State, 58 Texas Crim. Rep. 598; Lancaster v. State, 66 Texas Crim. Rep., 656, 148 S. W. Rep. 307. The testimony set out in the affidavit of one Harlin, appended to the motion for new trial, would appear to be of little or no value to appellant unless his witness Parrish testified differently upon another trial from what appears to have been his testimony in the instant case. On this trial he swore that he came home from a year's absence in the army, in August, 1919, and that he did not go with prosecutrix until February following. This statement of Parrish is directly contradictory of the testimony of Harlin as set out in said affidavit, in which Harlin alleges facts showing intimacy of Parrish with prosecutrix in the fall of 1919. In the testimony of Parrish also we find his statement to the effect that while he was in the army, prosecutrix quit writing to him and they "split up." That after his return home he tried to make a date with her and she refused, and that he did not try a second time to make such date. True, Parrish did make a general statement that after his return from the army he had intercourse with prosecutrix. The man Harlin lived in the same neighborhood as prosecutrix, and it appears from the record that on the instant trial Parrish while testifying for appellant, was asked relative to statements made by him in the presence of Harlin, to the effect that he purposed using a cundrum on prosecutrix. In this condition of the record we are not inclined to think that the Harlin affidavit reveals such newly discovered evidence as would likely be considered true, or as would probably produce a different result, or that diligence to discover same was shown. Branch's Ann. P. C., p. 128 and authorities cited.

Cole's affidavit attached to said motion for new trial, presents nothing of any weight as newly discovered evidence. It purports to set forth a statement made to affiant by O'Bannon who resides on a farm in the adjoining county of Coryell. The statement attributed to O'Bannon would be inadmissible. No apparent effort appears to get an affidavit from O'Bannon, nor is there any reason set up for not so doing.

No diligence is shown in the matter set out in the affidavit of Lura Gibson. Miss Gibson was a witness on the trial and testified for the appellant that she had a conversation with prosecutrix at the latter's home in October, 1920. No excuse appears for not finding out at the time of trial all that was said in this conversation. That appellant's attorney did not talk to Miss Gibson but a moment, and that she was not then asked to give the details of said conversation

as set out in her affidavit, would seem no sufficient reason for holding such conversation to be newly discovered evidence; nor would the fact that in the brief conversation had by appellant's attorney with said witness, and after he had asked her certain questions, that he then asked her if she knew any other fact that would shed light on the case, to which she answered in the negative, seem to justify any conclusion that said witness was misleading or concealing any testimony in such manner as that its subsequent statement by her or discovery by appellant's attorney, would make it newly discovered evidence. The witness was a layman and did not know what constituted facts shedding light on the transaction. Having stated to appellant's counsel that she had a conversation with prosecutrix, no diligence is shown when it appears that he did not further seek to elicit from her the entire facts and details of said conversation.

Complaint is made because of the failure of the court to submit special charges Nos. 3, 4 and 5 requested by appellant. In the main charge we find the following language:

"On the other hand, if you believe from the evidence that the said Pearl Morrison was induced to have intercourse with the defendant wholly or partly on account of her passion or desire for sexual intercourse, or upon the promise of marriage only if she became pregnant, or, if you should believe from the evidence, beyond a reasonable doubt that the defendant, Jeff McCoy, had intercourse with the said Pearl Morrison under and by virtue of a promise of marriage on or about the date alleged in the indictment, but you further believe that he or any other person had theretofore had intercourse with her, or if you believe such acts of intercourse if any, were had by the defendant without any promise on his part to marry the said Pearl Morrison, or you have a reasonable doubt thereof, you will acquit him."

We think this sufficiently presented the matters covered by said special charges which, in substance, asked that the jury be told that appellant must be acquitted unless, first, there was a marriage engagement in good faith prior to the first act of intercourse; second, that the motive prompting prosecutrix to submit herself to appellant's embraces was a promise to marry and not sexual passion; third, there was full reliance on such promise to marry when such act of intercourse was engaged in.

Appellant complains that the evidence is not sufficient to support the verdict, and to show the prosecutrix was chaste at the time appellant engaged in his criminal intimacy with her. We have carefully examined the entire facts. We omit any discussion of the question of appellant's intimacy with the young woman because he admitted such fact. On the question of her submission of her person to him upon promise to marry, we observe that she testifies positively to such fact, and the evidence shows that he began going with her about the first of August, 1920, and was very attentive, being with her two or three times a week, from that time until about the last of

November or in December, and as far as we can tell from the record she was going with no one else at said time. That she became pregnant about the first of October of said year appears without dispute. When her condition was discovered her mother says that the prosecutrix amid her tears and crying stated that appellant was the father of her child and that he was going to marry her. The mother testifies that thereafter her daughter made preparations for her marriage, and that she knew who the girl intended to marry. Prosecutrix testified that the only thing retarding the consummation of their plans to marry was the inability of appellant to secure rooms for them to occupy. An apparently disinterested witness testified that he overheard a conversation between appellant and prosecutrix over the telephone in which appellant told prosecutrix that he had not yet succeeded in securing rooms.

There have been many cases before our courts discussing the sufficiency of the corroboration necessary in cases of this character. In Wright v. State, 31 Texas Crim. Rep., 354, we stated that the corroborative evidence need not be direct and positive, or such evidence as would be sufficient to convict of itself, but that it was enough if it showed such facts or circumstances as tended to support the testimony of the prosecutrix and would satisfy the jury that she was worthy of credit. The facts in the instant case seem to us to bring it within the rule announced in many cases. The continued intimate association of appellant with prosecutrix; the apparently convincing fact that he was the author of her condition; her preparation to be married; her testimony that they were waiting only to get rooms; the testimony that she and appellant were discussing the getting of such rooms over the telephone, would seem to us to contain sufficient corroboration of the testimony of the young woman to justify the jury in their verdict and us in upholding same.

Finding no reversible error in the judgment same will be affirmed.

*Affirmed.*

### ON REHEARING.

### May 10, 1922.

LATTIMORE, Judge.—We have carefully reviewed the facts in this case and in the light of appellant's insistence in his motion for rehearing that there was no evidence corroborating prosecutrix in regard to her claim that she yielded her person to him relying upon his promise to marry her. It seems well settled that she must be corroborated by evidence of others, both as to the fact of intercourse with appellant and also that same was engaged in by her because of her reliance upon his promise to marry. From other evidence than her own must appear facts which tend to show that he did so promise to marry her prior to the act or acts of intercourse alleged.

Aside from the numerous witnesses to the good character of Miss

Morrison, prosecutrix herein, there were four witnesses for the State. None of these, nor any other witness, seem to have given testimony which upon mature consideration appears to support prosecutrix on the proposition under discussion, viz. the promise to marry. Her father gave no testimony bearing upon the question of such promise. Her mother testified to certain matters, but an examination of same reveals the fact that she herself says they were only what were told her by prosecutrix. A doctor who examined prosecutrix makes no mention of anything relating to a promise to marry. A Mr. Hibbit testified that in October or November, 1920, he overheard a telephone communication between prosecutrix and appellant relating to a house or some rooms in Hamilton. He heard appellant say that up to this time he had been unable to get any rooms. Whether the rooms referred to were for the joint use of appellant and Miss Morrison, or for one or the other alone, or for the use of other persons, does not appear in the testimony of said witness. We are afraid that we sought to extract corroboration from the testimony of Mr. Hibbit and that of prosecutrix's mother, but being convinced that if we did so, we were in error and that the record before us affords no corroboration of the testimony as to the promise of marriage, it is our duty to attempt to correct the error, and the motion for rehearing will be granted. Slaughter v. State, 86 Texas Crim. Rep., 527, 218 S. W. Rep. 767; Adams v. State, 87 Texas Crim. Rep., 67, 219 S. W. Rep. 460; James v. State, 72 Texas Crim. Rep. 155; Wisdom v. State, 45 Texas Crim. Rep. 215; Bishop v. State, 68 Texas Crim. Rep. 559.

For the reasons stated the motion for rehearing will be granted, the affirmance set aside, and the judgment reversed and the cause remanded.

*Reversed and remanded.*